# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANSHPREET SINGH,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,[1]<br><br>Respondents. | Case No. 1:25-cv-01501-EPG-HC<br><br>ORDER DISCHARGING ORDER TO SHOW CAUSE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DENYING RESPONDENTS' MOTION TO DISMISS, DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER, AND DIRECTING RESPONDENTS TO FILE STATUS REPORT<br><br>(ECF Nos. 1, 13, 14) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 10–12.) For the reasons stated herein, the Court grants the petition for writ of habeas corpus and orders Petitioner's immediate release.

---

[1] Respondents argue that the "Court should dismiss all respondents other than the Facility Administrator of the California City Correctional Facility because the only proper respondent to a habeas petition is the custodian having immediate custody of the petitioner." (ECF No. 13 at 1 n.1.) "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024). Although Doe held that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition," 109 F.4th at 1197, Doe did not necessarily preclude naming more than one respondent so long as the immediate custodian is named. Given that Petitioner has named his immediate custodian as a Respondent, the Court declines to dismiss all the other named Respondents.

1

**I.**

**BACKGROUND**

Petitioner is a citizen of India. (ECF No. 1 at 2; ECF No. 13-1 at 2.[2]) On July 21, 2024, Petitioner entered the United States through Montreal, Canada, and was encountered by United States Border Patrol agents in Moores, New York. (Id.) Petitioner was detained for three to four hours, was issued a notice to appear ("NTA"), and was released on his own recognizance due to a lack of bed space. (ECF No. 1 at 2; ECF No. 13-1 at 2, 6, 9–11.) Petitioner was served with a Form I-220A, Order of Release on Recognizance, which informed him of the conditions of his release. (ECF No. 13-1 at 2, 13.)

On August 20, 2024, Petitioner filed his asylum application, which is pending before the immigration court. (ECF No. 1 at 2; ECF No. 13-1 at 2.) An immigration court hearing is currently set for February 6, 2026. (ECF No. 13-1 at 2.)

Petitioner's first check-in with U.S. Immigration and Customs Enforcement ("ICE") occurred on August 5, 2024. He fully complied with ICE requirements and provided his address, and they informed him that his next check-in date would be on August 5, 2025. On August 5, 2025, ICE officers put Petitioner on GPS monitoring and informed Petitioner that they were going to visit his house. (ECF No. 1 at 2.) It appears that at that time, Petitioner was enrolled in the Alternative to Detention, Intensive Supervision Appearance Program ("ATD-ISAP"). (ECF No. 13-1 at 2.)

Petitioner resided with his uncle and aunt in Sacramento, California. After Petitioner returned home on August 5, 2025, Petitioner's relatives became uncomfortable because he had been placed on GPS, and an argument ensued when they found out ICE was going to visit the house. They informed Petitioner that he couldn't reside with them any longer and told him to leave. (ECF No. 1 at 2.) As it was nighttime, Petitioner called a friend within the same jurisdiction and his friend allowed Petitioner to stay with him. Petitioner intended to go to the ICE office the next morning, August 6, 2025, to inform them of the change of address. However,

---

[2] Page numbers refer to the ECF pagination stamped at the top of the page.

before Petitioner could go to the office, an ICE officer called Petitioner and Petitioner informed the officer of what had happened. The petition alleges that the officer indicated that it was okay and informed Petitioner that he just needed to come into the office and update his address. (ECF No. 1 at 2–3.) Petitioner immediately went to his attorney and updated his address with the court by filling out the Form E-33, Change of Address. Petitioner then immediately took the form to the ICE office and submitted the form. (Id. at 3.)

On August 12, 2025, ICE contacted Petitioner to come into the office. When Petitioner reached the office, he was apprehended and notified that it was due to a GPS violation of not being at his registered house on August 6, 2025. (ECF No. 1 at 3; ECF No. 13-1 at 2.) Petitioner was very confused and informed the agents of the situation again, that he had already updated the officer and the ICE office through proper legal channels. Petitioner was held in a holding cell until August 14, 2025. On the evening of August 14, Petitioner was transferred to the California City Correctional Facility. (ECF No. 1 at 3.)

On November 5, 2025, Petitioner filed the instant petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On November 7, 2025, the Court denied the motion for TRO as untimely. (ECF No. 5.) Respondents have filed a motion to dismiss, and Petitioner has filed an opposition. (ECF Nos. 13, 15.)

**II.**

**DISCUSSION**

**A. Order to Show Cause**

On December 10, 2025, Respondents filed a motion to dismiss the petition. (ECF No. 13.) Per the Court's November 10, 2025 scheduling order, "[i]f Respondent files a Motion to Dismiss, Petitioner SHALL FILE an Opposition or Statement of Non-Opposition within FOURTEEN (14) days of the date of service of Respondent's Motion." (ECF No. 6 at 2.) As no opposition or statement of non-opposition had been filed by the deadline, on December 29, 2025, the Court ordered Petitioner to file an opposition or statement of non-opposition by January 7, 2026, and ordered counsel to show cause why sanctions should not be imposed for failure to comply with the Court's November 10, 2025 scheduling order. (ECF No. 14.)

On December 31, 2025, Petitioner filed his response to the motion to dismiss. (ECF No. 15.) Therein, counsel requests that the Court not impose sanctions and states:

> Counsel candidly acknowledges that the deadline set by the Court was missed due to counsel's oversight. Specifically, counsel mistakenly reviewed only the docket text and missed that there was a full order and failed to open and review the full written order entered on ECF, which contained the briefing deadline. This was counsel's error, and counsel accepts full responsibility for the mistake.

(ECF No. 15 at 12.)

The Court declines to impose sanctions and discharges the December 29, 2025 order to show cause.

### B.  Procedural Due Process

In his second claim for relief, Petitioner asserts that as "part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding re-incarceration after his release." (ECF No. 1 at 17.) Petitioner contends that his "re-detention without a pre-deprivation hearing violated due process. Nearly two years after deciding to release Petitioner from custody on his own recognizance, Respondents re-detained Petitioner with no notice, no explanation of the justification of his re-detention, and no opportunity to contest his re-detention before a neutral adjudicator before being taken into custody." (Id.)

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

### 1.  Liberty Interest

Respondents argue that "Petitioner has 'only those rights regarding admission that Congress has provided by statute.' That is, Petitioner is entitled only to the protections set forth by statute and 'the Due Process Clause provides nothing more.'" (ECF No. 13 at 23 (quoting DHS v. Thuraissigiam, 591 U.S. 103, 140 (2020)).) In support of this position, Respondents rely on Landon v. Plasencia, 459 U.S. 21 (1982), Shaughnessy v. United States ex rel. Mezei, 345

U.S. 206 (1953), United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 (1950), and Thuraissigiam, 591 U.S. 103. These cases addressed due process rights *with respect to admission*, as evidenced by the language from these cases quoted by Respondents. Here, however, Petitioner is not raising claims regarding the admission process. See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("Defendants ask the Court to extract from Thuraissigiam a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such a conclusion is untethered to the claim in Thuraissigiam and the Court's reasoning. Thuraissigiam's discussion of due process is necessarily constrained to challenges to admissibility to the United States."), appeal filed, No. 24-2801 (9th Cir. argued May 21, 2025); J.E.H.G. v. Chesnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *10 n.10 (E.D. Cal. Dec. 9, 2025) (rejecting similar government argument); Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *3–4 (E.D. Cal. Dec. 8, 2025) (rejecting similar government argument).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The

> parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025). Accordingly, the Court finds that Petitioner has a protected liberty interest in remaining out of immigration custody.

2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

Respondents contend that the "Supreme Court, however, has never used this balancing test to divine the due-process requirements for immigration detention," citing Rodriguez Diaz v.

Garland, 53 F.4th at 1189, 1206 (9th Cir. 2022); id. at 1214 (Bumatay, J., concurring). (ECF No. 13 at 19.) However, in Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) ("Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)."); J.E.H.G., 2025 WL 3523108, at *10–11 (finding "liberty interest created by the fact that the Petitioner in this case was released on recognizance" and "[t]hus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue"). Based on the foregoing, the Court finds that the Mathews test is appropriate in this instance.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *5 (E.D. Cal. Mar. 19, 2025)). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (alteration in original) (quoting Zadvydas, 533 U.S. at 690). Petitioner's release on recognizance necessarily required a determination that he posed neither a flight risk nor a danger. Rocha Chavarria, 2025 WL 3533606, at *4 (citing 8 C.F.R. § 212.5(b); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025)); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). Respondents do not argue that Petitioner is now a flight risk or a danger to the community. "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S., 2025 WL 3167826, at *10 (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a custody hearing is relatively minimal, and there is nothing in the record before this

Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a bond hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

Carmen G.C., 2025 WL 3521304, at *7.

At such a pre-deprivation hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-detention is warranted. See Martinez v. Clark, 124 F.4th 775, 784–86 (9th Cir. 2024) (confirming that the government bears the "clear-and-convincing burden of proof" at an immigration bond hearing ordered pursuant to the Due Process Clause); Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is

the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."). "Moreover, several courts have explicitly discussed the discretionary nature of revocation of parole under § 1226, and held that despite such discretion, changed circumstances are necessary in order to revoke parole under § 1226." Tenorio Rugama v. Chestnut, No. 1:25-cv-1918 AC, 2025 WL 3707234, at *4 (E.D. Cal. Dec. 22, 2025) (collecting cases).[3]

### C. Appropriate Relief

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings in violation of due process. In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria, 2025 WL 3533606 (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera, 2025 WL 3485016 (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

---

[3] In light of the Court's conclusion that Petitioner's re-detention without notice and a bond hearing violates procedural due process, the Court declines to address Petitioner's first claim for relief regarding substantive due process.

Here, Respondents state that "Petitioner was taken into custody for violating his ATD-ISAP residence verification requirement." (ECF No. 13 at 6; ECF No. 13-1 at 2.) However, as set forth in section I, *supra*, Petitioner was kicked out of his relatives' house the night of August 5, 2025. On August 6, 2025, an ICE officer called Petitioner and Petitioner informed the officer of what had happened. Petitioner immediately went to his attorney and updated his address with the court by filling out the Form E-33, Change of Address. Petitioner then immediately took the form to the ICE office and submitted the form. (ECF No. 1 at 2–3.) Respondents do not contend that Petitioner is a danger or flight risk based on this alleged violation. Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy in this case.

## III.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The order to show cause issued on December 29, 2025 (ECF No. 14) is DISCHARGED.

2. The petition for writ of habeas corpus is **GRANTED** on Petitioner's second claim for relief.

3. Respondents' motion to dismiss (ECF No. 13) is **DENIED**.

4. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Vanshpreet Singh from custody with the same conditions he was subject to immediately prior to his detention on August 12, 2025.

5. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice—describing the change of circumstances necessitating his arrest and detention—and a pre-deprivation hearing before a neutral decisionmaker. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.

///

///

6.  On or before Tuesday, January 20, 2026, Respondents SHALL FILE a status report confirming that Petitioner has been released from custody.

IT IS SO ORDERED.

Dated:   **January 16, 2026**                   /s/ *Erica P. Grosjean*

                                         UNITED STATES MAGISTRATE JUDGE